IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THOMAS W. CUNNINGHAM,

    Plaintiff,

v.                            No. CV 12-1052 KJG/LAM

THE CITY OF ALBUQUERQUE, et al.,

    Defendants.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on ***Defendants’* Martinez *Report*** *(Doc. 29)* and

***Defendants’ Motion for Summary Judgment and Memorandum in Support*** *(Doc. 30)* filed on

April 22, 2013 and April 24, 2013, respectively.  Plaintiff filed a response to the *Martinez* report on

May 6, 2013 [*Doc. 31*], and a response to the motion for summary judgment on May 9, 2013

[*Doc. 32*].  Defendants filed a reply to their motion for summary judgment on May 23, 2013

[*Doc. 34*].  United States District Judge Martha Vázquez referred the claims raised in this case to

the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary.

[*Doc. 11*].  Also before the Court are Plaintiff’s ***Motion for Leave to Amend Complaint*** *(Doc. 26)*;

Plaintiff’s ***Motion Requesting Order for an Examination*** *(Doc. 37)*, Defendants’ response to this

motion *(Doc. 38)*, and Plaintiff’s reply to Defendants’ response *(Doc. 39)*; and Plaintiff’s ***Motion***

---

[1] **Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party’s objections within fourteen (14) days after being served with a copy of the objections.**

*Requesting the Production of Defendant's Lapel Camera Video (Doc. 41)*, and Defendants'
response to this motion (*Doc. 42*). Having considered the parties' submissions, relevant law, and
the record in this case, the undersigned, for the reasons set forth below, recommends that:
(1) **Defendants' Motion for Summary Judgment and Memorandum in Support** *(Doc. 30)* be
**GRANTED**; (2) Plaintiff's ***Motion for Leave to Amend Complaint*** *(Doc. 26)*, ***Motion Requesting***
***Order for an Examination*** *(Doc. 37)* and ***Motion Requesting Production of Defendant's Lapel***
***Camera Video*** *(Doc. 41)* be **DENIED**; and (3) Plaintiff's claims be dismissed as set forth below.

### *Background*

Plaintiff is an inmate proceeding *pro se* and *in forma pauperis*, and he initiated this case on
August 3, 2012, by filing a civil "Complaint to Recover Damages for Injury" in the Second Judicial
District of New Mexico. [*Doc. 1-1*]. On October 11, 2012, Defendants removed the case to this
Court. [*Doc. 1*].

The following facts are either undisputed by the parties or, where disputed, are presented in
the light most favorable to Plaintiff. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670
(10th Cir. 1998) (citations omitted). Any facts set forth in Defendants' motion for summary
judgment that are not specifically controverted by Plaintiff are deemed undisputed. *See* D.N.M.
LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless
specifically controverted.").

1.      On December 22, 2011,[2] Defendants David Fox and Matthew Vollmer and Detective Keith Sandy[3] participated in the execution of a valid search warrant for narcotics at the Best Choice Motel in Albuquerque, NM.  [*Doc. 30* at 1; *Doc. 29-2* at 12, 19 and 23].

2.      The affidavit for the search warrant stated that a confidential informant purchased narcotics from a black male nicknamed "JT" in Room 222 at that motel.  [*Doc. 29-1* at 3].

3.      The officers set up in Room 221, which was immediately next door to the room identified in the search warrant.  [*Doc. 30* at 2].

4.      The officers were maintaining surveillance on Room 222 to execute the warrant and identify the renter of the room who goes by "JT."  [*Doc. 29-1* at 15].

5.      The officers had previous interactions with the person the confidential informant named as "JT," and had identified him as Mr. Thomas Cunningham (Plaintiff).  *Id.*

6.      The officers identified Mr. Cunningham outside of Room 222 and saw him reenter this room.  *Id.*

7.      As Plaintiff was opening the door to Room 222, the officers, who were in police tactical attire clearly identifying them as police officers, emerged from Room 221 and Defendant Vollmer shouted to Plaintiff:  "Police, warrant, get down on the ground."  [*Doc. 30* at 2]; [*Doc. 1-1* at 3-4].

---

[2]Defendants state in their motion for summary judgment and *Martinez* report that the date of the incident at issue was December 21, 2012.  [*Doc. 30* at 1 and *Doc. 29* at 2].  However, it appears that the correct date of the execution of the search warrant was December 21, 2011.  *See* [*Doc. 29-1* at 5] (search warrant dated December 20, 2011 and filed December 29, 2011), [*Doc. 29-1* at 15-20] (Criminal Complaints in the state case stating that the search warrant was executed on December 21, 2011).

[3]The Court notes that Detective Sandy is not a named Defendant, has not been served, and, therefore, is not a party in this case.  Nevertheless, reading Plaintiff's submissions liberally under *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), it appears that Detective Sandy is likely one of the "Four or Five Unidentified Vice Officers" named in Plaintiff's Complaint.  *See, e.g.,* [*Doc. 31* at 3] (Plaintiff's response to the *Martinez* report, wherein Plaintiff identifies Detective Sandy as the officer who allegedly "stomped" on his chest).  The Court will consider below Detective Sandy's role in Plaintiff's allegations of excessive use of force.

8.      Plaintiff did not comply with this order and, instead, quickly entered Room 222. [*Doc. 30* at 2]; [*Doc. 1-1* at 4].

9.      The officers entered the room, and there were other people present in the room. [*Doc. 30* at 3]; [*Doc. 29-2* at 23-24, ¶5]; [*Doc. 1-1* at 4].

10.     Defendant Vollmer hit Plaintiff in the chest with the butt of his rifle and Plaintiff fell to the ground on his back.  [*Doc. 1-1* at 4]; [*Doc. 31* at 3].

11.     Detective Sandy stomped his foot on Plaintiff's chest.  [*Doc. 1-1* at 4]; [*Doc. 31* at 3].

12.     Plaintiff was arrested and when he complained of rib pain, the Albuquerque Fire Department EMS was summoned.  [*Doc. 30* at 4]; [*Doc. 31* at 3].

13.     Captain Jarrod Bottinelli of the Albuquerque Fire Department did not find any physical signs of trauma or injury.  [*Doc. 30* at 4]; [*Doc. 31* at 3-4]; [*Doc. 1-1* at 5].

14.     Plaintiff asked to be transported to the hospital, but his request was denied. [*Doc. 1-1* at 5]; [*Doc. 31* at 4].

15.     After Plaintiff was taken to jail, he went to the medical staff there and reported his rib pain.  [*Doc. 1-1* at 5].

In his Complaint, Plaintiff names the City of Albuquerque, City of Albuquerque police officers David Fox, Detective Vollmer, and "Four or Five Unidentified Vice Officers" as Defendants. [*Doc. 1-1* at 1].  Plaintiff brings the following claims: excessive use of force causing personal physical injury, failure to provide Plaintiff immediate medical attention, conspiracy to commit excessive use of force and for failure to intervene and failure to step forward with information, and illegal investigation in violation of Plaintiff's constitutional rights.  *Id.* at 6-7. Plaintiff seeks damages in the amount of $1,450,000 for compensatory, future medical, and punitive damages, and asks the Court to dismiss the charges in his state criminal case because the evidence

in that case was based on an illegal investigation stemming from an illegal entry, search and seizure a few weeks earlier.  *Id.* at 8.

In his motion to amend his complaint, Plaintiff asks the Court to allow him to add the Albuquerque Fire Department Paramedic Unit (Paramedic unknown), Fire Chief (unknown), and Albuquerque Police Chief Ray Schultz as defendants.  [*Docs. 26* and *26-1*].  Plaintiff also asks to add claims of "Medical Malpractice/Negligence" and "Deliberate Indifferent [sic]," contending that he was denied transportation to the hospital and that the paramedic misdiagnosed his injury.  [*Doc. 26-6* at 4].  In addition, Plaintiff seeks to add a claim for supervisory liability alleging that the chiefs of the Albuquerque Fire Department and Albuquerque Police Department are liable as supervisors for failure to supervise or properly train their employees.  *Id.* at 3.

Defendants seek summary judgment on Plaintiff's excessive force claim on the basis of qualified immunity.  [*Doc. 30* at 5-6 and 11-16].  In the alternative, Defendants contend that Plaintiff's excessive force claim should be dismissed because his injuries are *de minimus* and unsupported by credible evidence.  *Id.* at 5 and 16-17.  In addition, Defendants contend that Plaintiff's claim that he was denied medical attention is a "defective cause of action" because Eighth Amendment claims are unavailable pre-conviction.  *Id.* at 6.  Defendants also contend that Plaintiff's conspiracy claim regarding the investigation is not supported by evidence and should be dismissed.  *Id.* at 6.  Finally, Defendants contend that Plaintiff's claims against Defendant City of Albuquerque should be dismissed because Plaintiff fails to allege any claims that support a viable

cause of action for municipal liability, and that Plaintiff's claims against the City of Albuquerque are not ripe because no underlying constitutional violation has been established or proven.  *Id.* at 7.[4]

### Legal Standards Under Rule 12(b)(6) and Rule 56

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).  The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *The Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  While the well-pled factual allegations of a complaint must be accepted as true for purposes of a motion to dismiss, neither conclusory allegations nor legal conclusions disguised as factual allegations need be accepted as such.  *See Twombly*, 550 U.S. at 555-56.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler*, 144 F.3d at 670-71 (citation omitted).  Once this initial burden is met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmoving party.  *Id.* at 671.  The nonmoving party may not rest on his or her pleadings, but must set forth specific facts "identified by reference to affidavits, deposition transcripts, or specific

---

[4]Defendants state that the City of Albuquerque will file a separate motion to dismiss (*Doc. 30* at 7), but no motion has been filed and the deadline for filing dispositive motions in this case was March 26, 2013.  *See* [*Doc. 21* at 4].

exhibits incorporated therein" showing there is a genuine issue for trial. *Id.* (citations omitted). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citations omitted).

Because Defendants refer to attachments outside the pleadings, the Court will consider Defendants' motion as a motion for summary judgment. Typically, when a court converts a motion to dismiss into a motion for summary judgment, it "must give the parties notice of the changed status of the motion and thereby provide the parties to the proceeding the opportunity to present to the court all material made pertinent to such motion by Rule 56." *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir.2000) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 12(d) (explaining that, if "matters outside the pleadings are presented to and not excluded by the Court, the motion [to dismiss] must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all them material that is pertinent to the motion"). In the Court's ***Order to File a* Martinez *Report and Setting Deadlines for Dispositive Motions (Doc. 21)*** at 4-5, the Court gave the parties "**NOTICE that the *Martinez* report may be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or *sua sponte*,**" and instructed the parties to "**submit whatever materials they consider relevant to Plaintiff's claims and Defendants' defenses in their submissions related to the *Martinez* report including, but not limited to, any counter-affidavits or other responsive material.**" In addition to this notice, Plaintiff was put on notice that Defendants' motion could be considered under a summary judgment standard because it is titled ***Defendants' Motion for Summary Judgment and Memorandum in Support (Doc. 30)***, and Defendants' arguments therein

refer to documents in the *Martinez* report.  The Court, therefore, finds that Plaintiff had sufficient notice that this motion could be considered as a motion for summary judgment.

Because Plaintiff is proceeding *pro se*, the Court must review his pleadings liberally and hold them to less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520, *reh'g denied*, 405 U.S. 948 (1972).  This means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this does not mean that the Court can "assume the role of advocate for the pro se litigant." *Id.*  Defendants contend that the facts and arguments submitted in their motion for summary judgment should be deemed admitted and Plaintiff's arguments deemed waived because Plaintiff failed to comply with Fed. R. Civ. P. 56(e) and D.N.M. LR-Civ. 56.1(b) by failing to properly present facts or evidence to controvert the facts set forth in Defendants' motion for summary judgement.  [*Doc. 34* at 3-5].  The Court declines to do so, however, under the holding of *Hall*, because the Court can reasonably read Plaintiff's pleadings as setting forth his disputed facts and contentions in response to Defendants' motion for summary judgment.

### Defendant City of Albuquerque

Defendants state in their motion for summary judgment that Plaintiff's claims against the City of Albuquerque should be dismissed because Plaintiff fails to allege any viable claims for municipal liability.  [*Doc. 30* at 7] (citing *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978)); and [*Doc. 34* at 11].  A municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents but is subject to liability under § 1983 <u>only</u> when the violation of the plaintiff's

8

constitutionally protected rights can be attributed to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker.  *Monell*, 436 U.S. at 694.  Plaintiff has made no allegations and has presented no facts regarding the City of Albuquerque's policies or practices, or regarding a decision of a final municipal policy maker.  Therefore, the Court finds that Plaintiff has failed to set forth any valid § 1983 claims against the City of Albuquerque, and the Court recommends that Plaintiff's claims against the City of Albuquerque be dismissed.  Because the Court finds that the City of Albuquerque should be dismissed on this basis, the Court declines to address Defendants' alternative contention that Plaintiff's claims against the City of Albuquerque are not ripe because no underlying constitutional violation has been established or proven (*see Doc. 30* at 7).  The Court's references to "Defendants" from this point forward in its Proposed Findings and Recommended Disposition refer to the remaining Defendants, other than the City of Albuquerque, named in Plaintiff's Complaint.

### *Excessive Force Claim*

Plaintiff contends that the officers used excessive force during his arrest by hitting him with the butt of a rifle and by "stompin[g]" him on his chest while he was on his back on the floor. [*Doc. 1-1* at 6].  Plaintiff contends that he was not resisting arrest.  *Id.*  Plaintiff further contends that his ribs were broken and that he has ongoing pain when he lies on his left side or stomach.  *Id.* Defendants seek summary judgment on this claim, stating that they are entitled to qualified immunity because Defendants' actions were objectively reasonable and did not violate Plaintiff's clearly established constitutional rights or, in the alternative, because Plaintiff's alleged injuries are *de minimus* and unsupported by credible evidence.  [*Doc. 30* at 5].

Summary judgment motions based on qualified immunity are reviewed differently than other summary judgment motions in that, when a defendant asserts qualified immunity, "the burden shifts

to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citations omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable officer would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, --- U.S. ---, 131 S.Ct. 2074, 2083 (2011) (citation and internal quotation marks and brackets omitted). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional precedent beyond debate." *Id.* (citations omitted). "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (citation and internal quotation marks omitted).

To determine whether the force used to effect a seizure is reasonable under the Fourth Amendment, the Court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted); *see also Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008). The Court "must assess reasonableness from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and consider that police officers make split-second judgments -- in circumstance that are tense, uncertain and rapidly evolving -- about the amount of force necessary in a particular situation." *Blossom v. Yarbrough*, 429 F.3d 963, 967 (10th Cir. 2005) (citation, internal quotation marks and ellipsis omitted).

Applying these standards, the Court finds that Defendant Vollmer should be granted qualified immunity for Plaintiff's excessive force claim because Defendant Vollmer's actions did not violate clearly established law.  Plaintiff acknowledges that he ran into his hotel room after having been told to stop and get down, at which point Plaintiff alleges that Defendant Vollmer entered the hotel room and struck Plaintiff once in the chest with the butt of his rifle, knocking him to the floor. [*Doc. 31* at 3].  Defendant Vollmer disputes Plaintiff's allegation that he struck Plaintiff with his rifle causing Plaintiff to fall to the floor, but contends that, even if this were true, he is still entitled to qualified immunity. [*Doc. 34* at 3-4].  The Court finds that the first factor under *Graham* does not weigh in favor of either Plaintiff or Defendants because the crime at issue involved an arrest for an unknown amount, but impliedly a small amount, of crack cocaine, which is not necessarily a dangerous or violent crime, but is likely not a misdemeanor.  The second factor, however, weighs in favor of Defendants because Plaintiff fled into the hotel room, so Defendants did not know if Plaintiff had a weapon or if the other individuals in the hotel room posed a threat to the officers.  In addition, Defendants saw Plaintiff reach into his pocket which could have contained a weapon.  It turned out to be only a plastic bag containing crack cocaine.  *See* [*Doc. 29-2* at 3].  The third factor also weighs in favor of Defendants because Plaintiff attempted to evade arrest by moving into the hotel room instead of stopping when ordered to do so.  The Court, therefore, finds that it was reasonable for Defendant Vollmer to use force to get Plaintiff to stop and to get him on the ground because the situation posed an immediate threat to the safety of the officers and others, and because Plaintiff was attempting to evade arrest.  The Court can not substitute its judgment in hindsight for the officer's split-second judgment regarding the amount of force necessary in the situation.  Therefore, the Court finds that Defendant Vollmer is entitled to qualified immunity from Plaintiff's excessive force claim.

11

Next, the Court considers whether Detective Sandy's use of force in placing his foot on Plaintiff -- or "stompin[g]" on Plaintiff's chest, as Plaintiff contends -- was an excessive use of force. Defendants contend that Detective Sandy was using the "facedown stabilization" technique, whereby an officer uses his foot, rather than his knee, to keep a person from moving while the area is secured. *See* [*Doc. 30* at 3]. The Tenth Circuit has held that this technique was objectively unreasonable in a situation where the technique caused the death of a suspect because it was used for approximately three minutes after the suspect was handcuffed and his legs were restrained, where the suspect exhibited behaviors such as apparent intoxication, bizarre behavior, and vigorous struggle, all of which would alert a reasonable officer that he was a strong candidate for positional asphyxiation and death, and the suspect was subjected to such pressure for a significant period after it was clear that the pressure was unnecessary to restrain him. *See Weigel*, 544 F.3d at 1152 and 1155. There are no such allegations here -- Plaintiff does not allege that Detective Sandy applied the technique for an extended period of time or that he or any of the officers knew of any health factors that would have made it potentially dangerous to apply it to Plaintiff. Moreover, the Fourth Amendment does not require the use of the least or lesser forceful or intrusive means to effect custody, and the Court must only consider whether the officer used a reasonable method to end the threat posed to officers and others, regardless of the availability of less-intrusive alternatives. *See Mata v. City of Farmington*, 798 F. Supp. 2d 1215, 1226 (D.N.M. 2011); *Bailey v. Silver*, No. 11-CV-747-JHP-PJC, 2013 WL 1192600, *3, *8 (N.D. Okla. March 22, 2013) (unpublished) (finding no excessive use of force when an officer forcefully removed the plaintiff from a closet by pulling him by his legs from the closet, used an "arm bar" takedown to take the plaintiff to the floor, and planted his knee firmly into the plaintiff's back, and the plaintiff suffered rib fractures as a result of the officer's actions). As the court in *Bailey* stated: "Considering Plaintiff's initial refusal to

cooperate and the tense nature of the situation, the amount of force used by Defendant Newell was reasonable under the circumstances." *Id.* at *8. Therefore, for the same reasons stated regarding Defendant Vollmer, which are that Plaintiff evaded arrest by entering the hotel room after having been told to stop and the officers had to secure their safety inside the hotel room because of the presence of the other people therein, and Defendant reaching into his pocket potentially for a weapon, the Court finds that Detective Sandy's action in subduing Plaintiff by placing his foot on Plaintiff's chest or back is reasonable in light of the circumstances.

The Court next considers whether Defendant Fox is liable under § 1983 with regard to Plaintiff's excessive use of force claim. While Plaintiff does not contend that Defendant Fox directly participated in the allegedly unconstitutional use of force, a law enforcement official may be liable under § 1983 for failure to intervene to prevent another law enforcement official's use of excessive force. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). However, the Court has found *supra* that Defendant Vollmer and Detective Sandy did not use excessive force against Plaintiff. Therefore, the Court finds that Defendant Fox is not liable for any duty to intervene to prevent another law enforcement official's use of excessive force, and Plaintiff's excessive use of force claim against him should be dismissed. *See Mick*, 76 F.3d at 1136. Because the Court finds that Defendants did not use excessive force in arresting Plaintiff, the Court does not address Defendants' alternative contention that Plaintiff has failed to show an injury that is not *de minimus*.

### Failure to Provide Medical Attention Claim

Plaintiff next contends that he suffered cruel and unusual punishment because Defendants failed to provide him medical attention for the injuries he received during his arrest. [*Doc. 1-1* at 6]. Defendants state that this a "defective cause of action" because "8th Amendment claims are not available pre-conviction." [*Doc. 30* at 6]. The 1977 case upon which Defendants rely for this

contention, *Ingraham v. Wright*, 430 U.S. 651, 670 (1977), makes no such holding.  It instead holds

that the Eighth Amendment does not apply to public school teachers or administrators who impose

disciplinary corporal punishment on students.  *Id.* at 671.  Even though Defendants cited the wrong

case for their contention, Defendants are correct regarding their contention that <u>Eighth</u> Amendment

claims are not available to pretrial detainees.  *See Garcia v. Salt Lake County*, 768 F.2d 303, 307

(10th Cir. 1985) ("[T]he Eighth Amendment does not apply until after an adjudication of guilt.")

(citation omitted).  Nevertheless, a pretrial detainee is entitled to constitutional protection against

deliberate indifference to serious medical needs through the <u>Fourteenth</u> Amendment, and this

standard applies to arresting officers.  *See id.* and *Prado v. Lane*, No. 03-7001,

98 Fed. Appx. 757, 760, 2004 WL 882149 (10th Cir. April 26, 2004) (unpublished) (explaining that

"pretrial detainees enjoy the same protection from deliberate indifference to serious medical needs

as do convicted inmates").  The standard used to determine a violation of a pretrial detainee's right

to adequate medical care under the Fourteenth Amendment is the same as the standard for a

prisoner's right to adequate medical care under the Eighth Amendment.  *See Garcia*, 768 F.2d at 307

(finding no error when the district court used the Eighth Amendment standard regarding adequate

medical care for prisoners to determine whether a pretrial detainee's rights regarding medical care

were violated under the Fourteenth Amendment).  This standard is whether the failure to provide

adequate medical care was a result of deliberate indifference to a prisoner's serious medical needs.

*Id.*  The Court, therefore, finds that Plaintiff's citation to an inapplicable and unavailable

constitutional provision (*i.e.*, "cruel and unusual punishment" governed by the Eighth Amendment),

and his failure to cite the proper constitutional amendment (*i.e.*, the Fourteenth Amendment) in his

Complaint, does not render his claim invalid, especially given Plaintiff's *pro se* status.  Counsel for

14

Defendants should have briefed the Court regarding Plaintiff's Fourteenth Amendment rights to adequate medical attention, instead of citing a 30-page, irrelevant case.

Despite Defendants' startling and erroneous contention that Plaintiff has no right to adequate medical attention as a pretrial detainee, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim for failure to provide medical attention.  It is undisputed that Defendants summoned emergency medical services after Plaintiff's arrest when he complained of rib pain, and that Plaintiff was examined by the emergency medical personnel who arrived.  *See* [*Doc. 30* at 4] and [*Doc. 31* at 3].  This action by Defendants demonstrates that they did not act with deliberate indifference to Plaintiff's medical needs.  While the parties dispute whether Plaintiff asked to be taken to the hospital after his arrest, such a dispute is not material to the Court's findings here because Plaintiff's transport to a hospital would have been up to the emergency medical personnel who arrived on the scene to treat Plaintiff, and was not within Defendants' control.[5]  In addition, while Plaintiff alleges he has been diagnosed with "Tietze" syndrome as a result of being stomped on the ribs, and that his ribs had been broken and did not heal correctly (see *Docs. 17* and *33*), Plaintiff does not allege that those injuries were the result of any delay by Defendants in summoning the emergency medical services.  Instead, Plaintiff's allegations regarding his medical diagnoses as a result of his injury appear to pertain to the actions of the either the emergency medical personnel, or the personnel at the prison facility where Plaintiff was taken after his arrest, and Plaintiff has not brought claims against those parties in this case.  For these reasons, the Court finds that this claim should be denied.

---

[5]The Court addresses below Plaintiff's motion to amend his complaint to add the paramedics as defendants.

### *Conspiracy Claim*

Next, Plaintiff alleges that Defendants engaged in a conspiracy because "it seemed as if they wanted to strike me regardless, not just one officer but two and no one said anything," and because the Defendants did not step forward with information regarding the alleged excessive use of force. [*Doc. 1-1* at 6].  To state a claim for conspiracy, a plaintiff must allege that there was a combination of two or more persons acting in concert, and that there was "a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir. 2010).  In addition, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants because conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (citation, internal quotation marks and brackets omitted).  Here, Plaintiff makes mere conclusory statements regarding an alleged conspiracy, and fails to allege any agreement or concerted action among Defendants.  Plaintiff's allegations of conspiracy to commit excessive use of force, failure to intervene, and failure to step forward with information, without alleging specific facts showing an agreement and concerted action or inaction, does not state a claim for conspiracy.  *See id.* (holding that the plaintiff did not state a claim for conspiracy under § 1983 because allegations of "parallel action or inaction do not necessarily indicate an agreement to act in concert") (citation, internal quotation marks, dashes and ellipsis omitted).  In addition, Plaintiff fails to state what information should have been provided by Defendants.  The Court, therefore, recommends that this claim also be dismissed.

### *Illegal Investigation Claim*

Plaintiff alleges that the December 21, 2011, investigation of his hotel room was illegal because it was based on an initial illegal search of Plaintiff's hotel room a month earlier, when officers allegedly "illegally forced their way into [Plaintiff's] room without a warrant in

16

November 2011 after [he] refused to let them in." *See* [*Doc. 1-1* at 7]. Plaintiff states that the latter

investigation was "tainted" from the earlier investigation "due to the illegal search and seizure

pursuant to the fruit of the poisonous tree." *Id.* Plaintiff states that this violated his equal protection

rights, and asks the Court to dismiss the charges in his state case because they are based on the

illegal entry, search and seizure "by the same officer David Fox and his original partner from a few

weeks earlier." *Id.* at 8.

The Court lacks the power to direct the actions of state courts pursuant to the *Younger*

abstention doctrine. *See Southwest Air Ambulance, Inc. v. Las Cruces*, 268 F.3d 1162, 1177

(10th Cir. 2001) ("Under the abstention doctrine articulated by the Supreme Court in *Younger v.*

*Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), federal courts should not interfere with

[ongoing] state court proceedings by granting equitable relief - such as injunctions of important state

proceedings or declaratory judgments regarding constitutional issues in those proceedings when the

state forum provides an adequate avenue for relief.") (citations and internal quotation marks

omitted). The Court, therefore, cannot decide whether the pending state charges against Plaintiff

should be dismissed based on the allegedly unconstitutional entry, search and seizure. The Court,

therefore, recommends that this claim be dismissed.

### *Motion to Amend Complaint*

A party may amend his complaint once as a matter of course within 21 days of serving it or

21 days after service of a motion under Fed. R. Civ. P. 12(b), (e) or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). After that time-period has passed, "a party may amend its pleading only

with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Since

Plaintiff's motion to amend his complaint was filed well after the period to amend under

Rule 15(a)(1), and was filed without the opposing parties' written consent, the Court must consider

whether to allow Plaintiff to amend his complaint.  "The court should freely give leave when justice so requires" (Fed. R. Civ. P. 15(a)(2)), and the Court "may withhold leave to amend only for reasons such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the amendment" (*Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010) (citations and internal quotation marks omitted)).  A proposed complaint is futile where "it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile" or, even as amended, the complaint would be subject to dismissal for failure to state a claim. *Id.* at 1314-15.

In Plaintiff's motion to amend his complaint, he asks the Court to allow him to add the Albuquerque Fire Department Paramedic Unit (Paramedic unknown), Fire Chief (unknown), and Albuquerque Police Chief, Ray Schultz, as defendants (*Doc. 26-1* at 1), and to add the claims "Medical Malpractice/Negligence" and "Deliberate Indifferent [sic]," stating that he was denied transportation to the hospital, that the paramedic misdiagnosed his injury, and that the paramedic refused to treat him because "the police told him [he] was alright [sic]" (*id.* at 4).  In addition, Plaintiff contends that the chiefs of the Albuquerque Fire Department and Albuquerque Police Department are liable as supervisors for failure to supervise or properly train their employees. *Id.* at 3.  Plaintiff's motion to amend his complaint was filed March 7, 2013, which is more than six months after his complaint was originally filed in state court, and five months after Defendants removed the case to this Court.  Plaintiff offers no explanation for the delay, and there is no obvious reason to the Court why Plaintiff waited so long after filing his original complaint to attempt to add these new claims against these new defendants, especially since his new claims are based on the same set of facts presented in his original complaint.  The Court, therefore, finds that Plaintiff has

18

unduly delayed in filing this motion.  *See Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (upholding district court's finding that a 14-month delay in filing a motion to amend a complaint, with no explanation offered by the plaintiffs, constitutes undue delay); and *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994) (finding that an unexplained delay alone justifies the district court's discretion to deny the amendment).  Moreover, because Plaintiff's proposed amended complaint does not refer to the claims in the original complaint, and does not include the defendants from the original complaint, it is not clear whether Plaintiff is attempting to replace his original complaint with his proposed amended complaint, or if he is attempting to add these claims and defendants to his current claims and defendants.  For these reasons, the Court finds that this motion should be denied.  The Court recommends denying the motion without prejudice, however, so Plaintiff can raise these claims against these defendants in a new lawsuit if he chooses to do so.

### *Motion for Medical Examination*

In Plaintiff's motion for a medical examination, Plaintiff states that he has been unsuccessful in obtaining his medical records from the detention center, so he asks the Court to order a physical examination of his injuries pursuant to Fed. R. Civ. P. 35(a)(1).  [*Doc. 37*].  Defendants oppose the motion, contending that a Rule 35 examination is unnecessary because Plaintiff's alleged injuries have already been medically diagnosed and medical records relevant to the injuries already exist, and because an independent medical examination is not necessary to aid the Court in deciding any of Plaintiff's claims.  [*Doc. 38* at 4-5].  In his reply to the motion for a Rule 35 examination, Plaintiff states that he filed the necessary forms for his medical records, and asks the Court to request his medical records from the detention center.  [*Doc. 39*].

19

The Court may order a Rule 35 examination when the mental or physical condition of a party is in controversy, and the party seeking the examination demonstrates good cause for the examination. Fed. R. Civ. P. 35(a)(1). "Good cause" can be shown by a demonstration that a specific medical condition is really and genuinely in controversy, and that the movant is unable to obtain the desired information by other means. *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Here, Plaintiff's medical condition is not in controversy because the Court has found that there was no violation of Plaintiff's constitutional rights by Defendants regarding his medical treatment. The Court, therefore, finds that there is no need for Plaintiff's medical records or for a physical examination of Plaintiff in this case. The Court recommends denying this motion without prejudice, however, because Plaintiff's medical condition may be an issue if Plaintiff brings another suit against emergency medical personnel or prison personnel regarding his injuries.

### *Motion Requesting the Production of Defendant's Lapel Camera Video*

In this motion, Plaintiff states that Defendants failed to disclose in their *Martinez* report that they had possession of a lapel camera video that recorded the incident at issue, and Plaintiff contends that this video will support Plaintiff's contentions regarding Defendant's use of force. [*Doc. 41* at 2]. Plaintiff states that his counsel in his state criminal case learned of the existence of the video during a witness interview on July 9, 2013. *Id.*

In response to the motion, Defendants state that Plaintiff is mistaken and that "no lapel camera video of the subject incident exists in evidence." [*Doc. 42* at 1]. Defendants attach a sworn affidavit by Michael Sullivan, the Albuquerque Police Department's Supervisor of the Evidence Unit, which states that "APD does not possess lapel cam video evidence or belt tape recording evidence in the aforementioned matter." *Id.* at 4. Mr. Sullivan also states that the attached evidence log from Plaintiff's state criminal case is a complete record of the evidence received in that case and

does not contain video evidence or a belt tape recording.  *Id.* at 4, 6-7.  Moreover, counsel for Defendants states that he contacted Plaintiff's criminal defense attorney in Plaintiff's state criminal case, Jonathan Miller, and Mr. Miller stated that the witness interviewee referred to by Plaintiff in this motion promised to investigate whether a lapel camera video existed, but did not confirm the existence of a video.  *Id.* at 2.  Plaintiff did not reply to Defendants' response.

The Court finds that this motion should be denied because the Court's findings that Defendants did not violate Plaintiff's constitutional rights are based on consideration of the facts as presented by Plaintiff, or in the light  most favorable to Plaintiff, and Plaintiff does not show how any video evidence would affect those findings.  The Court, therefore, recommends that this motion be denied.

### *Plaintiff's Claims Against "Four or Five Unidentified Vice Officers"*

In his Complaint, Plaintiff names "Four or Five Unidentified Vice Officers" as Defendants. [*Doc. 1-1* at 1].  Plaintiff has not made any further identification of these officers, other than as to Detective Sandy (*see* footnote 3 above), and Plaintiff did not seek discovery of the names of these individuals or make any allegations against them.  Under Fed. R. Civ. P. 12(b)(6), a court "may dismiss a case *sua sponte* . . . when it is patently obvious that the plaintiff could not prevail on the facts alleged." *Andrews v. Heaton*, 483 F.3d 1070, 1074, n.2 (10th Cir. 2007) (citations and internal quotation marks omitted) (upholding the district court's dismissal of claims against unnamed John and Jane Doe defendants when the complaint failed to include any allegations against them). Therefore, the undersigned recommends that Plaintiff's claims against the "Four or Five Unidentified Vice Officers" be dismissed.

## RECOMMENDED DISPOSITION

For the foregoing reasons, the Court recommends that: (1) *Defendants' Motion for Summary Judgment and Memorandum in Support (Doc. 30)* be **GRANTED**; (2) Plaintiff's *Motion for Leave to Amend Complaint (Doc. 26)*, *Motion Requesting Order for an Examination (Doc. 37)* and *Motion Requesting the Production of Defendant's Lapel Camera Video (Doc. 41)* be **DENIED as set forth above**; and (3) all of Plaintiff's claims and this case be **DISMISSED with prejudice**.

_Lourdes A. Martinez_
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**